21-1249, Barbaro Technologies v. Niantic. Mr. Sigale? Yes, Your Honor. Good morning. Please proceed. Thank you, Your Honor. May it please the Court, my name is Jordan Sigale. I argue today on behalf of Appellant Barbaro Technologies, LLC. Barbaro primarily seeks reversal of the District Court's orders and validating two of its patents. These patents claim tech underlying today's massive multiplayer augmented reality games like Appellee Niantic's Pokemon Go. Ms. Frances Barbaro, the founder of Barbaro Technologies, conceived of the inventions disclosed in these patents and reduced them to practice in 2004. Both claimed inventions are directed to virtual thematic environments in a client-server computer architecture. In particular, the 377 patent is directed to a method of integrating real-time information into that virtual thematic environment. And the 325 patent is directed to a computer system in which a program stored in memory retrieves information from external sources over the Internet. That information, including a real-world geographic location of a user, integrates the information into a three-dimensional virtual thematic environment, such that the virtual thematic environment includes the real-world geographic location displayed to a user, such that the user interacts with the three-dimensional virtual thematic environment as a simulated real-world interaction. Counsel, is there any technological detail provided in the claims or the written description that tells us how to perform the integration? Your Honor, the specification does at length. The claim just refers to it as integrating the information into the virtual thematic environment, so that it includes the real-world geographic location displayed to the user. The claim stops there with respect to... Okay. Can you point to me where, then, in the written description that those details are provided? I can, Your Honor. I would direct the Court's attention. I'm going to use the 325 patent, since this issue relates to the 325 patent. Integration is discussed in various contexts. First, it's discussed at Appendix 142, Column 8, Lines 38 through 52, with respect to integrating in a travel example. Then, in Column 8, 53 through Column 9, Line 3, in a music video example. Just a second. I'm trying to read each of these examples one at a time. Oh, I'm sorry, Your Honor. Column 8, Line 38. Column 8, Line 38. It says, In another embodiment consistent with the present invention, the virtual environment can be a travel website, for example, such that when the user accesses different cities, the program can take the user to that city, so the user can have the real-world experience. Well, that just seems to say the result. How is it done? Okay. Sorry, Your Honor. Let me, then, address that. That's discussed later in the patent. I would direct the Court to Appendix 143, Column 9, Line 17. It talks about the virtual thematic environment interfacing with the GPS system, which will show the user a map. The program, and I'm going to paraphrase this, or we'll be here much longer than my 10 minutes allows, the program will allow the user to view the real-world satellite map, street photographs, et cetera, or virtual representation of the same, showing buildings, landmarks. The user can tie in with product placements, et cetera. Mr. Zagali, this is Judge Lynn. Again, you're describing a result. How does it accomplish that result? Well, Your Honor, it accomplishes that result using the logical architecture that's discussed with respect to Figure 1. The basic tenet of Ms. Barbaro's invention that was disclosed in the Continuation in Part application in 2004 was the ability to deploy these inventions across various types of computer devices, including portable telephones, PCs, et cetera. I understand that, but what I'm struggling with is where in the patent does it tell anyone how this is accomplished? The integration, Your Honor, specifically or in general? Well, just both. I don't find even a general explanation of how this is done, other than sort of broad statements about using various pieces of computer technology, memory, and processing to accomplish a desired result. But I don't see anything that says this is how you do it, or this is what happens, and this is how you accomplish this result. Well, Your Honor, your reference to the common computer or conventional computer component is apt here. The aggregation of conventional computer components is at the heart of what Ms. Barbaro did in 2004, which she determined was in the integration you need to have something that she called the quantum imaging engine, which was discussed at length below. And the quantum imaging engine allowed in the logical architecture the acquisition of information and the deployment of information across a graphical user interface by pulling information from thematic publishing logic and a digital content library, as well as in the embodiment that's most relevant to the 325 patent, a GPS system. And in particular, she disclosed the need to obtain that information from sources that are external to the system over the Internet. And the beauty of this, Your Honor, which is really the focus of the 325 patent, is that the information was not being developed necessarily on, let's call it the portable smartphone. The information was being developed elsewhere, and then it was downloaded from these external sources over the Internet into the system that is deployed in the memory and runs on the processor on the various different types of devices. It is the modularity of the system. It is the modularity of keeping certain components separate as set forth in the logical architecture that's discussed with respect to Fig. 1 of the patent that allows this to be accomplished. And so the 325 patent claims point out that the information is retrieved from external sources over the Internet, and then it's integrated, as opposed to trying to develop this information, such as a user's location within the real-world geographic location or the satellite images and the other virtual attributes of the virtual thematic environment. That's particularly important with the massive multiplayer virtual reality games that are disclosed in the 325 and the 377 patent. If the information is being aggregated on each of the distributed smartphones, you've got a logjam. And we saw something like this previously in the court's opinion in... I'm drawing a blank on it. I'll have to come back to it. Where it was the distribution of the claim filter, the filtering of viruses across the network, as opposed to having it aggregated in the single personal computer. We see a similar invention here in the 377 and the 325 patent. What Ms. Barbara recognized was you need to offload certain things to the server. And what we're looking at in the claims of the 325 patent are a client. We're looking at a computer system for providing virtual thematic environment. This memory could be deployed on a smartphone, something that was still fairly novel in 2004 when this patent specification was written and filed. And by having the information come from external sources over the Internet, so that all that was left for the portable device to do is to integrate that into the virtual environment using the various aspects of the logical architecture, it allowed for this system to operate. And it allowed for the system to work on the variety of devices. You know, it's the irony of the concern that the district court had because this invention works across a variety of devices, which was the heart of the invention. The idea that the invention was not so bloated that it couldn't work on what was the smartphone that was commonly found back in 2004. And that's because of the logical architecture that Ms. Barbara developed that's disclosed in Figure 1 and because of things that we see like external sources over the Internet. Figure 1, so you're saying that there's no description. I mean, I went through the details of the description of Figure 1 and it doesn't tell us really anything. So you're saying we're just supposed to look at the figure and understand that that's where the technological details can be found? Well, Judge O'Malley, if I may, Your Honor. Judge O'Malley, Figure 1 is described in the detailed description as is Figure 2, which is a particular physical embodiment of a client-server paradigm. And between those two figures, there's over six columns of discussion about where the state of the user is maintained and how information is downloaded to allow this overall system to operate. With respect to the 325 patent, those claims focus on this geographic example of the thematic environment. And in that example, the key here is that it's the information coming from external sources over the Internet that allows this thinner client to work, which was quite a feat and novel in 2004. Thank you, counsel. If I may, I'd like to reserve things. Let's hear from Ms. Simmons, please. Thank you, Your Honors. May it please the Court. The Court should affirm the final judgment of invalidity of both patents in this case for the reasons identified by the District Court and for the additional alternative reason that the term virtual thematic environment is also indefinite, rendering all claims of both patents invalid. Starting with the 101 issues that the Court was focused on just a moment ago with opposing counsel's argument, I believe the Court's questions actually hit the nail right on the head. The real issue here is that this patent, and particularly the asserted claims, are directed to the idea of a solution, not an actual solution to an alleged problem. The reason we know that is because the claims do not tell us, nor does the specification tell us, how the claimed integrating, which is the focus of Barbaro's argument as to why the claims are patentable, there's nothing that tells us how that integrating is to be accomplished other than the disclosure of using conventional, existing, and well-known technologies and elements. So the patent discloses using a memory and a processor, nothing particularly new or unconventional disclosed about those concepts or those components, and the patent discloses obtaining GPS location information and integrating that. Nothing is disclosed that is unconventional or inventive about how that process is to be performed. And then as the Court's questions previously sort of hit on, there's nothing in the specification or the claims that says how this integration is to happen. What's your response to your friend on the other side when he said that he believes that it's all over the specification because the whole point is to make this viable on a whole host of platforms? Your Honor, it is true that the specification provides numerous examples of the result. Here's how this result looks. I'm able to be in an environment where it appears that I'm in a pub. That's still only claiming the result. And the fact that the patent describes a way to modulize, I believe as counsel explained, the software, doesn't change the fact that the claims themselves are directed to this abstract idea. And even in these detailed descriptions about ways to modularize the software and even to distribute the software across different clients and servers, there's nothing that tells us, okay, so you've distributed things. Now here's how you do the integration. That is entirely lacking from both the claims and the specification. And counsel noted that it is Barbaro's position that this was a new way of doing it. And even if that were true, and we don't agree that it is, as this court has explained numerous times, even a new idea, abstract idea, is still an abstract idea and therefore is not patentable. What could they have added in this case to avoid the 101 problem? Details, technological implementation details about how the integration, at least at a minimum, is to be performed. That is completely lacking. And the district court found this to be lacking as well. The patent says that the issue with virtual environments at the time was a lack of realism. And so the solution is integrate real-world location information into the virtual environment, but that's just a result. And the patent failed to tell us how do we do this integration. So the patent is simply claiming an abstract idea and claiming the functional result of integration without giving us any help as to how we would perform that integration, other than simply referring to conventional well-known techniques of retrieving information and displaying it to the user. And indeed, the patent confirms that the claims are directed to this abstract idea and provide no technological advancement with the links that the specification goes to to tell us and to tell a person of skill in the art that there really are no limits to how this patent can be implemented. In fact, the specification at column 11, lines 24 through 28, says that the basic technology of the present invention can be applied to almost any virtual or holographic environment. The sheer number of applications is limitless. This confirms that the claims are directed to an idea, not to a specific technologically detailed described advancement in technology or implementation of this idea. How is this less sufficient than the patent claims in DDR holdings? The claims in DDR holdings, Your Honor, actually provided more specific information about how the new webpage could be created and described that there was a technological way to create webpages using hyperlinks or to go from one page to another using conventional hyperlink functionality. And the specification then went on to say, but we're not going to do it that way. We're going to change the conventional hyperlink functionality so that we can direct users instead to this newly created, this composite webpage, so that the initial website owner doesn't lose these website visitors. That provides an actual concrete technical implementation that is not only is it provided in detail, but it's provided in detail that explains that we're going to do it in a way that's different than the conventional way of doing it. Because the conventional way of doing it is what has led to the problem that we're trying to solve. There's nothing like that in the 325 patent. There is only a recitation of using conventional components and conventional techniques to retrieve information and then display it in the virtual environment, such that a user is then able to see it and interact with it in the virtual environment. I was just going to say I can move on unless the court has further questions about the 101 issues. Well, anybody have any further questions? No. Okay, Mr. Simmons, so should we give Mr. Segale his rebuttal time? Unless the court has questions about the other issues, the digital logic library or the virtual thematic environment arguments that we raised in our brief, I'm happy to address those. But if the court has no specific questions and would prefer to go back to rebuttal, I'm happy to do that as well. Okay, thank you very much, Ms. Simmons. Mr. Segale, you have some rebuttal time? Thank you, Judge O'Malley. First, I want to make sure that we're clear. In the 101 analysis, the focus is not on any particular element. It's on the claim as a whole, whether that be in Step 1 or Step 2. And the fact that we're focused on integrating today happens to be a result of the questioning, not the result of the claim. And the claim itself talks about retrieving information. And while the integration that we focused on may be relatively conventional, and there's one more site that I didn't get to when Judge Lynn asked a different question, and I'll give that in a second, but I chafe at the concept that there's no limit to this claim, right? The limit to the claim is the key to this invention, which is that the information that's utilized in the three-dimensional virtual thematic environment is retrieved from external sources over the Internet. And the discussion of that is, I think, readily found in the specification. With respect to the integrating issue, our case law has long held that fazitas understand how to do basic kinds of conventional things. This claim is not solely the conventional constitution of a computer system, but we don't ask patentees to explain gravity to people. Fazitas understand gravity. Fazitas understand that a GPS provides certain information, and that information can then be used to move to a particular index in a database. And with that point, I would direct Your Honor to column 33, line 65, through column 34, line 16. This is appendix 155, where there's a discussion about what happens when GPS information is integrated into the virtual thematic environment. The information that's contained in this short quarter of a column essentially incorporates the information that's discussed previously with respect to the constitution of the logical architecture and the discussion of the particular physical embodiment that came before this discussion that appears towards the end of the patent. But again, the key here is not that this claim is unlimited. Perhaps the application of what Ms. Barbaro disclosed back in 2004 was, but the particular claim at issue in the 325 patent is not. It's limited to retrieving particular information from external sources over the Internet. Moreover, that particular information must include, it's not that it's limited to, but it has to include a real-world geographic location of a user within the three-dimensional virtual thematic environment. It is hard to say with those limitations that this claim could preempt an entire series of virtual thematic environment inventions and developments. It is a narrow idea about how you were able to do massive multiplayer games on simple devices, particularly early on in the development of smartphones. You had to obtain the information that you were going to integrate into the virtual thematic environment from an external source. And that's counterintuitive. It's counterintuitive when your phone has on it a GPS that we're also going to have your location determined from external sources over the Internet. Whether that be your location being communicated up to the database that's described in the specification of the patent that's in the server and then moves down, or there's some other means for doing that, it is still a limitation and it still is the inventive concept that makes this something more. With that, my time has expired. Okay, I thank both counsel. The case is taken under submission.